The Court.

Harrington, Chief Justice,

charged the jury: The act which the plaintiff complained of in the case as" *22 the trespass alleged by him, and the place where he assumed it was committed, was the erection of an hydraulic ram on what had once been the bed of an ancient millpond, known as Grantham’s, or Moore’s mill. The plaintiff alleges that he was in possession of the place at the time the trespass complained of was committed, and that the invasion of this possession by the defendant constituted him a trespasser, and entitled the plaintiff to a verdict without reference to his title, unless the defendant had shown on his part a good and valid legal title to it. The general principle of law in regard to the action was this, that the action of trespass, quare clausem fregit, lies for a wrong done to the possession of real property; and a plaintiff proving himself in possession merely of such property, and an entry upon it by the defendant, it would constitute the latter a trespasser, unless he could prove on his part a title to the premises, or a right otherwise, as by licerise or permission, to make such entry. If, therefore, the plaintiff had proved that he was at the time in possession of the place where the ram was erected, as the erection of it by the defendant was admitted, he would be entitled to recover damages for the trespass without further proof of title, unless the defendant had proved a better title to the premises, or a possession in common with the plaintiff of them. In the latter case the parties were both put upon their proof of title, and that party must prevail who had proved the legal title to be in him.' In a ease of common possession of land by both parties to the suit, the law adjudged the rightful possession to him who had the legal title, and no length of time of such holding could give a title by possession as against such legal title; but an independent, separate, and adverse holding, under an exclusive claim, continuously asserted and maintained for twenty years, was itself a good title. The nature or kind of possession which would give title to real estate, must of course depend, in some degree, on the nature and condition of the property itself. An inclosure is one mode of holding. 'Cutting wood or grass upon land was an act of asserted *23 - possession; and even the pasturing of cattle repeatedly, and as a matter of exclusive right, on uninclosed land, was evidence of possession; yet these acts must be exclusive, in opposition to others, and continued adversely for twenty years, to confer an absolute title by possession merely. But no act that does not amount in itself to an assertion of right to the soil, could be evidence of possession of the soil. Thus the use of water in a mill-pond would not be evidence of title to the land which it covered, because such use of the water for mill privileges, or any other purpose connected with the water simply, and not with the land it covers, is not evidence of title to the land, or of that kind of possession which could give title to the land. In contemplation of law such a party could not own the water; all he could claim would he the right to the use of it; and to the accumulation and flow of it for the purposes indicated; and, not possessing the water which covered and occupied the land, he could not be said strictly to possess the soil covered by it; at all events, except for the special uses and purposes before stated. It was not an uncommon thing for the water privilege, and even the privilege of drowning land for'mill purposes, to exist in one person, and the right to the land as a resulting or remaining right, subject to the privilege, tb exist and reside in another; and in such a case the possessiqn would not be advez’se, hut consistent with the right of the owner of the soil covered by the water. The main question, then, in the case is, which of the parties had shown title tb the place formezly covered by the waters of the pond which had been abandoned for the purpose of a mill stream, and which was now claimed by both parties as land, to be used and enjoyed as such without any reference to mill privileges. If such a possession as had been befoz-e defined; that is to say, if an. actual, exclusive, uninterz’upted and adverse possession of the place in question for a period of twenty years since the mill-pond was abandoned and went down, had not been proved on the part of the plaintiff, then the parties would stand with regard tb it on their respective *24 legal rights as they were presented in the paper titles exhibited by them.
The land in question at one time belonged, on the show of both parties, to the Granthams; and the plaintiff derives his title from Grantham through sundry intermediate deeds to Moore, Caldwell, Hinsey, Fennister,. Kay, Moore, Gross, and Mary Bartholomew. The defendant, on the other hand, claimed title under the will of Jacob to Isaac Grantham, and the will of the, latter to Thomas and Isaac Gr. Jacquett, the sheriff’s sale of their property to McDowell, and the sheriff,’s sale of the property of the latter to the defendant. All these title-papers had been exhibited in evidence, together with the plots and pretensions of the parties, and the lines of the deeds as respectively claimed by them; and it would be for the jury to say, from the proof before them, whether the lines of either or any of the deeds included the land in controversy; and, if so, to which of the parties, the place where the trespass is' alleged to have been committed, belonged, according to the deeds shown and the lines located on the plots.
But the court was called on to remark upon the con- - struction and effect of some of the deeds, the first of which was the one recited in the deed from Samuel Moore to James Caldwell, of the date of 1792, purporting to be from Isaac Grantham to Scott and Patterson, and which was supposed to refer to the place in dispute. That, however, was a question of fact to be decided by the jury. If it did not, of course the force and effect of it was of no consequence in the case. ' But, supposing the four acres embraced in that deed to include the premises in question, two objections had been taken to it by the counsel for the defendant; the first of which was that the deed itself being of record, as the recital states, the record should have been produced, or its absence accounted for, before the recital, which was only secondary evidence of it, could even be admitted to be weighed or regarded by the jury; and in the second place, admitting that the recital was evidence of the deed, the terms employed would not convey the *25 land formerly covered by the water of the pond. As to the non-production of the record itself, it is open and subject to remark as a fact affecting the force and perhaps the correctness of the recital in this respect; but still the recital is in evidence, introduced by the regular admission of the deed which .contained it, and it would be for the jury to give it whatever weight they might consider it entitled to under the circumstances. In regard to the other objection, the terms employed in the deed according to the recital were, “ together with all and singular the mill, house, mill-dam, races, floodgates, mill-wheels, stones, hoppers, bolting chests and cloths, waters, water-courses, and others the appurtenancesand it was the opinion of the Court that, under these recited words, the title to the bed of. the pond, or the soil occupied by the water of it, would not pass. That might appear to some as a refined distinction; it was sustained, however, not only on legal principles, but was vindicated by reason and common practice. The conveyance of an estate in, or title to the land, and the grant of an easement or privilege connected with or in regard to land, are different things. The latter might possibly be said to be appurtenant to the former in some cases, but the land could never be said to be appurtenant to the latter; and unless the terms employed were proper and sufficient words to include and transfer the title to the land, it would not pass by the conveyance, whatever rights or privileges might otherwise be granted by it. There were no words employed in the recital which could operate to convey the ground covered by the pond.
Another deed had been referred to in the testimony of several witnesses, upon which the Court had been asked to charge as matter of evidence. It was alleged by the plaintiff that there was a lost deed from a person by the name of Grantham to a person by the name of Moore, relating to the premises in question, and which conveyed title in the land formerly covered by the pond to a party under whom he claimed. That deed had not been produced; but it was admissible to supply the loss of it, by proving *26 first, its existence, secondly, its destruction, or loss, thirdly, its contents—its whole contents—in substance and effect. Had the plaintiff proved that any such deed ever existed— a deed lawfully executed by the party of the former name, who once owned the land, conveying it to the Samuel Moore under whom he claimed—that such deed had been lost and could not be produced, after diligent search for it wherever it might have reasonably been supposed to be, and if produced, that it would cover the place in regard to which the controversy existed ? On that subject the jury would recur to the testimony of the several witnesses as to the deed, and to the declarations of parties, interested in that question, and whose declarations, if made at a time when such interest existed in them and before they conveyed away the land, would bind the parties claiming under them.
Rodney, for plaintiff.
T. F. and J. A. Bayard, for defendant.
The plaintiff had a verdict; and at the same term the defendant obtained a rule to set it aside, on the ground of misdirection in the charge of the Court to the jury, which was afterwards heard’, and a new trial granted. Vide post.